UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CALVIN BRADDOCK, | |
| Plaintiff, | Case No. 1:14-cv-03839 |
| v. | |
| UNITED PARCEL SERVICE, INC., | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Calvin Braddock ("Plaintiff") is a former employee at Defendant United Parcel Service, Inc. ("Defendant" or "UPS"). Plaintiff alleges that in October 2011, he was diagnosed with Reynaud's Disease, a circulatory disorder that causes the arteries to undergo exaggerated constriction in response to cold temperatures, limiting blood flow to the affected areas. Plaintiff further alleges that he requested a reasonable accommodation for his condition from Defendant around November 2012, which Defendant failed to provide. Plaintiff's sole remaining claim sounds in failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*[1] Defendant moved for summary judgment, and, for the reasons explained below, that motion [72] is granted.

---

[1] Plaintiff voluntarily surrendered his discrimination, retaliation, and harassment claims against Defendant in his Response [77] to Defendant's Motion for Summary Judgment.

## I. Background[2]

Plaintiff began working for UPS as a Data Capture Clerk ("Data Clerk") in November 2000. [74] at 3. Plaintiff's Data Clerk position is, and has always been, located in the Air Dock of Defendant's Jefferson Street facility in Chicago, Illinois. *Id.* at 4. The Air Dock is a large building with 26 loading dock doors that open directly to the outside air throughout the day. [78] at 3. Plaintiff testified that these doors are open "constantly," throughout his "entire shift." [74] at 2. Trucks park at these loading dock doors to deliver and receive UPS packages. *Id.* Plaintiff's work station was located within 50 feet of the loading dock doors near several conveyor belts, which are used to move incoming and outgoing packages throughout the day. *Id.* at 6. Plaintiff's job was to retrieve packages from those conveyor belts, examine them, and process information relating to the packages on the computer at his work station. *Id.* at 4.

The temperature in the Air Dock fluctuates, but it most often resembles the temperature outside. *Id.* at 3-4. During the winter months, the thermostat in the Air Dock is set to 45 degrees. *Id.* at 5. Once the temperature in the Air Dock reaches 45 degrees, four industrial heaters automatically adjust to maintain that temperature. *Id.* at 4-5. In light of these conditions, the written job description for Plaintiff's position explicitly identifies the ability to work in "variable

---

[2] The facts are taken from the parties' Local Rule 56.1 statements. [74] refers to Defendant's statement of facts. [78] contains Plaintiff's responses to Defendant's statement of facts. Plaintiff did not separately articulate any additional facts justifying his opposition to Defendant's motion as required by Local Rule 56.1, though he did append several exhibits to his responses to Defendant's statement of facts. This formulation is inconsistent with Local Rule 56.1 and deprives Defendant of a meaningful opportunity to contest Plaintiff's factual assertions. In the interests of justice and judicial economy, however, the Court will consider these exhibits in support of Plaintiff's opposition to Defendant's motion for summary judgment.

temperatures," including "inclement weather," as an essential job function. [75] Ex. A.

Plaintiff was diagnosed with Reynaud's Disease by Dr. Irvin Weisman ("Dr. Weisman") around October 2011. [74] at 5. Reynaud's Disease is a circulatory disorder that causes the arteries to undergo exaggerated constriction in response to cold temperatures, limiting blood flow to the affected areas. *Id.* At that time, Dr. Weisman also issued a permanent medical restriction limiting Plaintiff from working in temperatures below 68 degrees. *Id.* at 6. In November 2012, Plaintiff's symptoms flared up, and he asked UPS to increase the temperature in the Air Dock. *Id.* at 7. Although Plaintiff did not use the word "accommodation" or invoke the Americans with Disabilities Act specifically, UPS treated his complaint as a request for accommodation under the ADA. *Id.*

On November 27, 2012, UPS sent Plaintiff a letter regarding the ADA process and an ADA packet, which was to be completed by a physician. [78] at 13. At this point, the most recent medical documents UPS had regarding Plaintiff's medical condition were from January 2012. *Id.* Plaintiff, in contravention of UPS's request, completed the ADA packet himself and returned it to UPS. *Id.* at 14.

Plaintiff attended a "checklist meeting" on January 20, 2013, at which time he requested that UPS adjust the Air Dock's thermostat to maintain a temperature of 68 degrees. *Id.* at 15. He proposed no other accommodations during the ADA resolution process. *Id.* UPS nevertheless searched for alternative jobs for Plaintiff in an area of the Jefferson Street Facility that remained above 68 degrees at all

times. [74] at 11. This search was unsuccessful, and Plaintiff has not returned to work since 2012.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland School Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

Plaintiff's sole remaining claim is failure to accommodate under the ADA, which requires an employer to provide "reasonable accommodations" to the known physical limitations of an "otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The parties agree that Plaintiff is disabled under the ADA.

### A. Plaintiff Has Not Defaulted On His Claim

Defendant first argues that when Plaintiff failed to return his ADA packet with information from his doctor, he defaulted on his failure to accommodate claim because he failed to participate in the interactive resolution process contemplated by the ADA.

Defendant relies upon decisions concerning plaintiffs who produced virtually no usable material to their employers, which are a stark contrast to the present case. For example, the plaintiff in *Nicholson v. Allstate Insurance Company* only provided their employer with notices of doctors' visits and outdated medical forms indicating that plaintiff had sleep apnea and diabetes. 495 F. App'x 716, 719 (7th Cir. 2012). By "failing to provide the requested documents," Plaintiff failed to "make Allstate aware of any medical need for an accommodation, and thus Allstate was not obligated to provide one." *Id.*

Similarly, the plaintiff in *Steffes v. Stepan Company* originally provided her employer with a doctor's note claiming that she had been ordered to eliminate any exposure to chemicals. 144 F.3d 1070, 1073 (7th Cir. 1998). Another letter from the plaintiff's doctor elaborated on the nature of her restriction, and stated that the plaintiff "has been advised to avoid chemical exposure." *Id.* at 1072. The court determined that because plaintiff "failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions, Stepan cannot be held liable for failing to provide reasonable accommodations." *Id.* at 1073.

In this case, however, Defendant was made aware of Plaintiff's medical restriction. Indeed, Plaintiff provided UPS with a medical evaluation from Dr. Weisman, which diagnosed Plaintiff's medical condition and identified his "permanent" medical restriction. [78] at 21. Further, in contrast to *Nicholson* and *Steffes,* the medical restriction identified by Dr. Weisman and Plaintiff did not require clarification: Plaintiff simply cannot work in temperatures below 68 degrees. *See supra* at 3.

Defendant's "interactive process" argument accordingly fails. The Court proceeds to consider Defendant's substantive argument that Plaintiff could not perform his essential job functions, with or without a reasonable accommodation.

### B. Plaintiff Cannot Perform Essential Job Functions

To survive summary judgment on his failure to accommodate claim, Plaintiff must adduce sufficient evidence from which a reasonable factfinder could determine whether he can perform the essential functions of a Data Clerk with reasonable accommodation. *See Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010); *see also Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("In response to an employer's motion for summary judgment, it is the *plaintiff's burden* to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation.") (emphasis added).

To "determine whether a job function is essential, we look to the employer's judgment, written job descriptions, the amount of time spent on the function, and

6

the experience of those who previously or currently hold the position." *Majors v. General Electric Co.,* 714 F.3d 527, 534 (7th Cir. 2013) (internal citation omitted).

For Data Clerks, being able to work in the Air Dock (even when it is under 68 degrees) is an essential job function. Indeed, the written job description for the Data Clerk position explicitly identifies the ability to work in "variable temperatures" and "outside, inclement weather" as an "essential job function[]." [75] Ex. A. This job description comports with the record, which reflects that UPS employs Data Clerks to quickly examine and process packages in the Air Dock. [74] at 4. Because Plaintiff cannot work in temperatures below 68 degrees and the temperature in the Air Dock is frequently less than 68 degrees, he cannot perform an essential job function without an accommodation.

### C. Plaintiff Has Not Identified Any Accommodations That Would Enable Him to Perform a Data Clerk's Essential Functions

In light of the above, Plaintiff bears the burden of proposing reasonable accommodations that would enable him to perform the essential functions of a Data Clerk. *See Gratzl*, 601 F.3d at 680. A "reasonable accommodation" is defined as "making existing facilities used by employees readily accessible to and usable by individuals with disabilities, . . . job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111(9). An employer need not provide an accommodation when it would impose an "undue hardship." *Id.* at §

7

121112(b)(5). Undue hardship means "an action requiring significant difficulty or expense." *Id.* at § 12111(10). Factors "to be considered" when determining whether a proposed accommodation represents an undue hardship include, *inter alia*, "the nature and cost of the accommodation," the "overall financial resources of the facility" involved in the provision of the reasonable accommodation, the "impact" of the proposed accommodation "upon the operation of the facility," and the "type of operation" of the covered entity. *Id.*

Since November 2012, Plaintiff has suggested four accommodations that ostensibly would allow him to perform the essential functions of a Data Clerk, *i.e.*, to work in the Air Dock reviewing packages as they pass on the conveyor belts. Taking each proposed accommodation in turn, the Court finds that Plaintiff has failed to carry his burden on this score.

### 1. Space Heater

First, Plaintiff proposes that UPS could allow him to use a space heater at his desk. This proposed accommodation is facially suspect, in light of the undisputed fact that the Air Dock is an open facility, and Plaintiff has adduced no evidence to establish that a space heater would actually maintain the requisite temperature at his work space. *See Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 542 (7th Cir. 1995) (an "inefficacious change would not be an accommodation of the disability at all").

Moreover, allowing Plaintiff to use a space heater at his work station would constitute an undue burden in light of the "type of operation" at issue here. 42

8

U.S.C. § 12111(10). For sound reasons, space heaters are explicitly prohibited by UPS's safety policies. [74] at 12. Multiple affidavits supplied by UPS explained that these safety policies are animated by the obvious concerns associated with the prospect of using a space heater in a large warehouse full of packages wrapped in paper. *See, e.g.,* [75] Ex. A.

Finally, Plaintiff has seemingly abandoned this proposed accommodation at summary judgment. [77] at 6-7 ("UPS' seemingly far-fetched parade of horribles about . . . the risks supposedly associated with portable space heaters are interesting but beside the point. There is no reason why UPS would need to do either of these things, and Mr. Braddock did not advocate either of them."). In the end, this proposed accommodation would be ineffective, impose undue hardships on UPS, and was arguably abandoned. Accordingly, it is rejected as a matter of law.

### 2. Heated Floors

Next, Plaintiff proposes that UPS install heated floors under his desk. This novel accommodation, raised for the first time on summary judgment, is untimely. *See Stevo v. CSX Trans., Inc.*, No. 95-cv-7449, 1997 WL 667816, at *7 (N.D. Ill. Oct. 24, 1997), *aff'd sub nom.*, 151 F.3d 1033 (7th Cir. 1998) ("The time frame in which an ADA plaintiff may describe a reasonable accommodation is not so generous as to encompass suggestions made only in resistance to summary judgment.") (internal quotation omitted). Additionally, Plaintiff has also failed to demonstrate how this proposed accommodation would actually keep him at the requisite temperature at all times.

9

Likewise, Plaintiff has adduced no cognizable evidence addressing either the obvious "cost of" this accommodation or the "impact" of this proposed accommodation "upon the operation of the facility." 42 U.S.C. § 12111(10). Instead, Plaintiff merely cites to an unauthenticated, hearsay newspaper article regarding the use of heated floors in residential homes, which is inapposite on summary judgment. [78] Ex. 5.; *see also Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("Admissibility is the threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment.").

Ultimately, this proposed accommodation is untimely, there is no admissible evidence in the record from which a reasonable juror could conclude that this proposed accommodation would be effective, and Defendants have adduced cognizable evidence demonstrating that this proposed accommodation implicates undue burden and expense. This proposed accommodation fails as a matter of law.

### 3. Office Away From The Air Dock

Plaintiff also suggests that UPS might accommodate him by moving his Data Clerk position to a heated area of the facility, away from the Air Dock. Here again, Plaintiff did not propose this accommodation until the summary judgment phase, which is too late.[3] *See Stinson v. W. Suburban Hosp. Med. Ctr.*, No. 97-cv-3701, 1998 WL 188938, at *6 (N.D. Ill. Jan. 21, 1998) ("suggestions as to accommodations

---

[3] Plaintiff now claims in his briefing that he proposed this accommodation during the interactive process, but this assertion is belied by the record. Plaintiff admitted in his response to Defendant's statement of undisputed facts that, other than turning "up the thermostat in the Air Dock to 68 degrees," he "proposed no other job modifications or accommodations of any kind during the ADA process." [78] at 15.

an employer might have made cannot be offered at the summary judgment stage to prove a failure to accommodate").

This proposed accommodation also fails on substance. It is undisputed that the closest office to Plaintiff's current work station is 201 feet away. [79] at 9. Data Clerks like Plaintiff are tasked with retrieving and examining packages from the conveyor belts in the Air Dock itself, and Plaintiff has produced no evidence explaining how he could perform these essential functions from an office over 200 feet away. *See Kirincich v. Illinois State Police,* 196 F. Supp. 3d 845, 847 (N.D. Ill. 2016) (granting summary judgment where the only accommodation that would have allowed the plaintiff to return to work rendered her effectively unable to perform other essential functions of her job).

Finally, this proposal suffers from the same fundamental shortcoming associated with the space heater and the heated floors—even if UPS assigned Plaintiff to an office away from the Air Dock, the nature of the Data Clerk role and the layout of the Air Dock essentially guarantee that Plaintiff will frequently be exposed to temperatures under 68 degrees. *See Vande Zande*, 44 F.3d at 542 (an "inefficacious change would not be an accommodation of the disability at all").

### 4. Turning Up The Thermostat

Plaintiff's final proposed accommodation is to simply require UPS to increase the temperature in the Air Dock to 68 degrees using the heating system currently in place. Plaintiff has adduced no evidence suggesting that this is actually possible. The Air Dock is a large space with 26 loading dock doors that open to the outside air

11

throughout the day. [74] at 2. Even if it were theoretically possible, maintaining a temperature of 68 degrees in the Air Dock would greatly increase UPS's energy costs and potentially cause the Jefferson Street Facility to exceed its entire energy budget. *Id.* at 10. Heating an open-air facility to 68 degrees to accommodate an employee is prohibitively expensive and unreasonable as a matter of law.

Plaintiff cannot perform the essential functions of a Data Clerk, and he has proposed no reasonable accommodations that remedy this shortcoming; accordingly, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim. *See Gratzl*, 601 F.3d at 680.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [72] is granted.  Civil case terminated.

Date: February 28, 2017                                      Entered:

 

_____
John Robert Blakey
United States District Judge